**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT PEARSON, | |
| Plaintiff, | Civil Action No. 15-7109 (ES) |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

SALAS, DISTRICT JUDGE

Before the Court is an appeal filed by Robert Pearson ("Plaintiff") seeking review of Administrative Law Judge Kimberly Schiro's ("ALJ" or "ALJ Schiro") decision denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court has subject matter jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court AFFIRMS ALJ Schiro's decision.

## I.      BACKGROUND

Plaintiff is a 58-year-old male who alleges disability since November 11, 2010, due to HIV, hepatitis C, tuberculosis, high blood pressure, and cataracts. (D.E. No. 15 ("Pl. Mov. Br.") at 2) (citing D.E. No. 7, Administrative Record ("Tr.") at 206, 261). Plaintiff applied for SSI Benefits on April 9, 2013. (*Id.* at 1) (citing Tr. at 206-14). The application was denied initially and again upon reconsideration. (Tr. at 15). Plaintiff requested a hearing before an Administrative Law Judge, which was granted, and Plaintiff testified before ALJ Schiro on December 10, 2014. (*Id.*).

1

At the hearing, Plaintiff stated that he last worked as a dishwasher at Columbia High School in Maplewood, New Jersey in 2006. (D.E. No. 16 ("Def. Opp. Br.") at 2) (citing Tr. at 236). Plaintiff stated that he currently has arthritis in his foot and problems with his right eye as a result of cataracts. (Tr. at 33-34). He explained that he has pain in his right foot and that he sometimes has to sit for hours and wait for the pain to go away. (*Id*. at 52). Plaintiff also noted that his foot pain is less frequent because he began taking a new medication, but that the pain is not completely alleviated. (*Id*. at 36).

Plaintiff stated that he spends most of his time reading and sleeping, but also takes care of most of his own needs, including food shopping and doing laundry. (*Id*. at 42-43). Plaintiff uses public transportation and rides his bike as his primary modes of transportation. (*Id*. at 44). Additionally, Plaintiff stated that he can walk about two blocks before requiring a break; then, after a 10 to 15-minute break, he can walk farther. (*Id*. at 51). Plaintiff also stated that he can sit for numerous consecutive hours. (*Id*. at 52).

On December 16, 2014, ALJ Schiro denied Plaintiff's application for SSI. (*Id*. at 21). The ALJ held that Plaintiff has the residual functional capacity ("RFC") to meet the physical and mental demands of his previous work as a dishwasher, as he actually performed it. (*Id*.).

Plaintiff requested that the Appeals Council review the ALJ's decision, and the Appeals Council denied his request on July 31, 2015. (Pl. Mov. Br. at 2) (citing Tr. at 1-3). Plaintiff then appealed the Commissioner's decision by filing a Complaint with this Court. (D.E. No. 1). Plaintiff filed a moving brief on November 7, 2016. (Pl. Mov. Br.). Defendant filed an opposition brief on December 21, 2016. (Def. Opp. Br.). Plaintiff filed a reply brief on December 22, 2016. (D.E. No 17 ("Pl. Rep. Br.")). The matter is now ripe for resolution.

## II.    LEGAL STANDARD

### A.  Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).[1]  "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft*, 181 F.3d at 360.  Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000).  The Third Circuit noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and

---

[1]     Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

## B. Standard for Awarding Benefits

To be eligible for SSI under Title XVI of the Social Security Act, a claimant must establish that he or she is disabled as defined by the Act. *See* 42 U.S.C. §§ 1382. Additionally, claimants seeking SSI must fall within the income and resource limits set forth in §§ 1382a and 1382b.

An individual is deemed disabled under Title XVI if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the inquiry ends. *Id.* The burden rests on the claimant to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, the burden shifts to the Commissioner. *Id.*

**Step One.** At step one, the claimant must demonstrate that she is not engaging in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. *Id.* §§ 416.972(a), (b). If an individual engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work

experience. *Id.* § 404.1520(b). If the claimant demonstrates she is not engaging in substantial gainful activity, the analysis proceeds to the second step.

**Step Two.** At step two, the claimant must demonstrate that her medically determinable impairment or the combination of impairments is "severe." *Id.* § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. *Id.* § 404.1520(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

**Step Three.** At step three, the ALJ must assess the medical evidence and determine whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* § 404.1520(a)(4)(iii). Upon a finding that the claimant meets or medically equals a listing, the claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 416.920(d).

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Not inconsistent does not mean that the opinion must "be supported directly by all of the other evidence [i.e., it does not have to be consistent with all the other evidence] as long as there is no other substantial evidence that contradicts or conflicts with the opinion." *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided."

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

**Step Four.** If a claimant is not found to be disabled at step three, the analysis continues to step four, in which the ALJ determines whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant lacks the RFC to perform any work she has done in the past, the analysis proceeds.

**Step Five.** In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on her RFC and vocational factors. *Id.* § 404.1520(a)(4)(v).

## III. ALJ SCHIRO'S DECISION

ALJ Schiro applied the five-step evaluation process required by 20 C.F.R. § 416.920(a) and determined that Plaintiff was not disabled under the Act. (Tr. at 15-21).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since the date of his disability application on February 7, 2013. (*Id.* at 17).

At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: HIV, hepatitis C, and cataracts. (*Id.*). The ALJ found that these impairments "have more than a minimal effect on [Plaintiff's] ability to perform basic work activities, such as lifting and carrying." (*Id.*). Additionally, the ALJ determined that Plaintiff's impairments of tuberculosis ("TB"), high cholesterol, hypertension, arthritis in his feet, and diffuse body pains were non-severe

impairments. (*Id.*).[2] Plaintiff testified that he had TB, but that it has been treated and there have been no further issues. (*Id.*). The record also indicated that his high cholesterol and hypertension have not yet resulted in any significant complications. (*Id.*). At the December 10, 2014 hearing, Plaintiff stated that he had arthritis in his feet for the past two months and diffuse body pain throughout various parts of his body. (*Id.*). The ALJ determined, however, that "there [was] little evidence to support a medically determinable orthopedic or neurologic impairment that has lasted or can be expected to last for 12 months." (*Id.*). The ALJ concluded that Plaintiff's TB, high cholesterol, hypertension, arthritis of the feet, and diffuse body pains "have no more than a minimal effect of his ability to perform basic work activities." (*Id.* at 18).

At step three, the ALJ determined that Plaintiff "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*). The ALJ found that Plaintiff's HIV does not meet or equal Listing 14.08 because Plaintiff's CD4 counts have been high and his viral load has remained undetectable. (*Id.*). Further, Dr. Kabiawi, Plaintiff's treating physician, indicated that Plaintiff has not had any significant manifestations of HIV, including opportunistic infections or weight loss. (*Id.*). Plaintiff also indicated at the hearing that his HIV was at an undetectable level. (*Id.* at 19).

Additionally, Dr. Kabiawu stated that Plaintiff's hepatitis C has been treated successfully to date. (*Id.* at 18). The record did not show any significant side effects as a result of heptatitis C (e.g., hemorrhaging requiring blood transfusions, ascites, spontaneous bacterial peritonitis, and end-stage liver disease) and, accordingly, the ALJ found that Plaintiff's hepatitis C does not meet

---

[2]     The ALJ identifies "cataracts" as both a severe and non-severe impairment. (Tr. at 17). This appears to be a typo, however, as the ALJ thoroughly analyzes "cataracts" with the other severe impairment and does not discuss "cataracts" with the other non-severe impairments. (*See id.* at 17-18).

or equal Listing 5.05. (*Id*.). Plaintiff also has cataracts in both eyes and testified that he has cloudy vision in his right eye. (*Id*.). According to an October 30, 2014 examination, Plaintiff has 20/25 right-eye vision after correction and 20/40 left-eye vision after correction. (*Id*.). Therefore, the ALJ found that Plaintiff's visual impairments do not meet or equal Listings 2.02 or 2.04, because Plaintiff's best eye after correction is not 20/200 or less. (*Id*.). The ALJ further found that the cataracts are not yet mature enough for surgery. (*Id*. at 20).

At step four, the ALJ determined that Plaintiff had the RFC to perform the full range of light work, which is defined as the ability to "lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour day; and sit 6 hours in an 8-hour day." (*Id*.). The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (*Id*. at 19).

Disability Determination Services ("DDS") found that Plaintiff can "lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; and perform unlimited pushing and/or pulling within the given weight restrictions." (*Id*. at 20). Based on these determinations, DDS concluded that Plaintiff can therefore perform his past work as a dishwasher and porter as actually performed. (*Id*.). DDS determined that Plaintiff's HIV was a "severe" impairment, but that his hypertension, hyperlipidemia, chronic liver disease, and loss of central visual acuity were "non-severe" impairments. (*Id*.).

ALJ Schiro noted that she gave "great weight to DDS's opinion under 20 CFR 416.927." (*Id*.). The ALJ also noted that she gave some weight to Dr. Kabiawu's medical source statement (Exhibit C10F) and little weight to Dr. Kabiawu's Work First New Jersey ("WFNJ") report from July 31, 2014. (*Id*.). The ALJ gave little weight to the WFNJ report because it stated that Plaintiff

would be totally disabled through July 31, 2015, but it provides no details with regard to Plaintiff's limitations. The ALJ also noted that Plaintiff's testimony of his ability to perform daily activities (including reading, doing laundry, going shopping, riding his bicycle, and taking public transportation) corroborates that he is not totally disabled. (*Id.*).

Based on DDS's determination of Plaintiff's RFC, the ALJ concluded that Plaintiff is capable of performing his past relevant work as a dishwasher, as he performed those duties. (*Id.* at 21). The November 9, 2010 ALJ decision notes that Plaintiff worked full-time as a dishwasher from 2004 to 2006 and that he earned $11,228.58 in 2005, which would constitute SGA. (*Id.*). The Plaintiff testified to his job duties, which the ALJ determined fall within the light-work range that Plaintiff remains capable of completing under his RFC. Accordingly, the ALJ found Plaintiff "not disabled" under § 1614(a)(3)(A) of the Act. (*Id.*).

## IV.    DISCUSSION

Plaintiff argues that the ALJ's decision "is not supported by substantial evidence" and that the ALJ improperly evaluated Plaintiff's claim. (Pl Mov. Br. at 6). First, Plaintiff contends that "the Commissioner improperly evaluated the medical evidence," asserting that the ALJ failed to give proper weight to Plaintiff's treating physician and did not give proper credence to all of Plaintiff's impairments, including mental impairments. (*Id.* at 8-14). Second, Plaintiff contends that the Commissioner erred in finding that Plaintiff can perform his past relevant work because the ALJ did not complete a proper RFC analysis, including a "function-by-function" assessment, and did not receive a vocational expert's opinion on Plaintiff's impairments. (*Id.* at 14-19).

### A.  The ALJ Properly Evaluated the Medical Evidence

Plaintiff argues that "Judge Schiro failed to accord any weight to [P]laintiff's treating doctor which is contrary to 20 C.F.R. § 404.1527 which provides that adequate weight should be

given to the opinion of the claimant's treating physician." (*Id.* at 11). Further, Plaintiff contends that the ALJ did not give sufficient weight to the Plaintiff's complaints concerning all of his impairments and that the ALJ sought "to minimize the [P]laintiff's impairments by emphasizing [P]laintiff's limited abilities while ignoring medical evidence to the contrary." (*Id.* at 9). Plaintiff notes that the fact that he is able to complete some tasks does not negate the severity of his condition, but "only means that he was partially functional on a few occasions." (*Id.*). Plaintiff also highlights that his treating physician, Dr. Kabiawu, stated that he was unable to perform any work. (*Id.* at 10).

Further, Plaintiff argues that the ALJ's finding that Plaintiff has the RFC to meet the demands of light work is contrary to the medical evidence provided by his treating physician. (*Id.* at 10-11). Plaintiff explains that his statements are consistent throughout the record and corroborated by medical evidence. (*Id.* at 11-12). Additionally, Plaintiff argues that his mental impairments would inhibit his ability to work since they would limit his ability to "understand, remember, and carry out very short and simple instructions" (*id.* at 12) and may "interfere[] with attention and concentration needed to perform even simple work tasks" (*id.* at 9).[3] The Court rejects Plaintiff's arguments.

While an ALJ must consider the opinions of treating physicians, "[t]he law is clear. . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity" where

---

[3] The record contains little support for Plaintiff's allegations of mental limitations. Plaintiff appears to rely solely on a report in which Dr. Kabiawu (i) checked a box indicating Plaintiff has a personality disorder; (ii) noted that Plaintiff has "limited but satisfactory" mental abilities in nine categories and "seriously limited, but not precluded" mental abilities in two categories; (iii) and checked various aspects of workplace stress that Plaintiff would be unable to perform (e.g., "strict deadlines," "exposure to work hazards"). (Tr. at 389-93). This type of evidence is generally afforded little weight. *See Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x. 196, 199 (3d Cir. 2008) ("[T]he ALJ was entitled to accord lesser weight to [the physician's] opinion because it was provided in a check-box form and he did not provide any reasons in support of his various conclusions."). Further, the DDS explanation indicates that Plaintiff has not been prescribed any medication for this diagnosis, and there is no evidence of additional treatment from a mental health professional. (Tr. at 64).

it is not well supported or there is contradictory evidence. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (alteration in original). Moreover, state agency physicians merit significant consideration in the analysis to determine whether a party is disabled. *See* 20 C.F.R. §§ 404.1513a(b)(1) (stating that state agency physicians are "highly qualified" and "experts" in social security disability evaluations). To that end, an ALJ can appropriately consider DDS opinions regarding disability. *Chandler*, 667 F.3d at 361. Further, "the degree to which [non-examining sources] provide supporting explanations for their medical opinions" affects the weight that an ALJ will give to those opinions. 20 C.F.R. § 404.1527(c)(3). Finally, "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Here, the ALJ relied on medical evidence provided by Plaintiff's treating physician. For example, the ALJ found that Plaintiff's HIV "does not meet or equal Listing 14.08" because Dr. Kabiawu's determined that Plaintiff (i) "has not had any significant manifestations of HIV, such as opportunistic infections or weight loss"; and (ii) "does not have marked restriction in the activities of daily living; marked difficulties in maintaining social functioning; or marked difficulties completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." (Tr. at 18). The ALJ also relied on Dr. Kabiawu's statement that Plaintiff's hepatitis C "has been treated successfully to date" in concluding that Plaintiff's hepatitis C "does not meet or medically equal Listing 5.05." (*Id.*).

The ALJ explained that she gave "great weight to DDS's opinion," which provided a disability determination contrary to that of Dr. Kabiawu. (*Id.* at 20). ALJ Schiro stated that she gave some weight to Dr. Kabiawu's medical source statement (Exhibit C10F), but little weight to

his WFNJ report "because it states that [Plaintiff] is totally disabled through July 31, 2015, but provides no details with regard to [Plaintiff's] limitations." (*Id.*); *see Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."). Indeed, the ALJ explained that Dr. Kabiawu's total-disability finding is contradicted by other evidence, such as Plaintiff's testimony that he can "perform the activities of daily living, such as laundry and shopping, and his ability to ride his bicycle, read, and take public transportation." (Tr. 20). Thus, contrary to Plaintiff's claims, the ALJ did not substitute her own medical opinion, but rather relied on the DDS's opinion and gave little weight to the treating physician's report due to lack of detail about Plaintiff's limitations and inconsistencies with the hearing testimony.

### B. The ALJ Made a Proper RFC Finding

Plaintiff argues that the ALJ "improperly determined that Plaintiff could perform his past relevant work." (Pl Mov. Br. at 14). To that end, Plaintiff argues that the ALJ's "[RFC] assessment is merely conclusory and is not supported by the medical evidence of any of the treating doctors, or the State Agency non examining physicians." (*Id*. at 15). Plaintiff contends that the ALJ did not perform an RFC analysis as required under SSR 96-8p, including the "function-by-function" assessment. (*Id*. at 15-18). Plaintiff also maintains that the ALJ did not explain why she rejected the treating doctor's disability finding, and argues that where the ALJ's assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." (*Id*. at 18) (citing SSR 96-8p). Plaintiff further argues that the medical evidence shows he cannot work on a "regular and continuous basis" and therefore cannot be employed for substantial and gainful employment. (*Id*. at 13, 19). Plaintiff avers that the ALJ did not explain

the mental demands of Plaintiff's past work and how Plaintiff would be able to meet those mental demands. (*Id*. at 19) (citing SSR 82-62). Again, the Court rejects Plaintiff's arguments.

The ALJ, not the treating physician or State agency consultant, makes the ultimate disability and RFC determination. *Chandler*, 667 F.3d at 361 (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). As discussed previously, the ALJ explained the reasons why she relied on the DDS's opinion over that of the treating physician. In July 2013, State agency physician Nancy Simpkins, M.D., concluded that Plaintiff retained the capacity (i) to lift twenty pounds occasionally; (ii) to lift ten pounds frequently; and (iii) to sit, stand, or walk six hours in an eight-hour workday. (*See* Tr. at 60-66). Dr. Simpkins's opinion was later corroborated by a second State agency physician, Leonard Corness, M.D. (*Id*. at 70-78). DDS concluded that Plaintiff could perform his past relevant work as a dishwasher and a porter as he actually performed it.[4] (*Id*. at 77). The ALJ relied on DDS's findings that Plaintiff "can lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; and perform unlimited pushing and/or pulling within the given weight restrictions." (*Id*. at 20). The ALJ's RFC assessment was based on her determination that DDS provided the most credible evidence. (*See id.*). And the Court finds that the ALJ gave a sufficient explanation for her determination, as explained above. To be sure, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

---

[4]    Plaintiff notes that the ALJ referred to his past relevant work as a dishwasher using Dictionary of Occupational Titles ("DOT") number 827.584-010 (Electrical Appliance Preparer), but the appropriate DOT number for a dishwasher is 318.687-010 (Kitchen Helper). (Pl. Mov. Br. at 16-17). The Court concludes that this mistake is harmless error, as the ALJ compared Plaintiff's RFC to Plaintiff's testimony of his prior position as a dishwasher as he actually performed his duties. (Tr. at 21).

Finally, Plaintiff claims that no vocational expert was used by the ALJ to view Plaintiff's non-exertional and environmental impairments. (Pl. Mov. Br. at 19). Plaintiff argues that 20 C.F.R. §§ 404.1569(a)(c), 416.969(a)(c) "requires a vocational expert's testimony in the presence of significant non exertional limitations and environmental limitations that affect claimant's occupational base." (*Id.*). According to Plaintiff, "the ALJ committed reversible error by failing to obtain [sic] vocational expert's testimony." (*Id.*).

A claimant may be found "not disabled," however, if the ALJ determines that he or she has the RFC to perform either "the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61. The ALJ relied on Plaintiff's testimony detailing his past work as a dishwasher to determine that he could, with his current RFC, meet the demands of a job he performed within the past 15 years. (Tr. at 21). Further, the ALJ explained that Plaintiff, as a dishwasher, "was required to wash dishes in a sink in the morning and load them into a machine in the afternoon." (*Id.*). The ALJ noted Plaintiff's testimony that he "lifted light weight and only lifted one dish at a time." (*Id.*). In fact, the ALJ specifically relied on Plaintiff's testimony that "[his] job involved lifting up to 20 pounds and frequently lifting up to 10 pounds" and that Plaintiff "would walk 1 hour, stand 3 hours, sit 3 hours, and climb 1 hour during the day." (*Id.*). Finally, the Court notes that "the decision to use a vocational expert is at the discretion of the ALJ." *Lopez v. Comm'r of Soc. Sec.*, 270 F. App'x 119, 123 (3d Cir. 2008).

## V.    CONCLUSION

For the foregoing reasons, the Court AFFIRMS ALJ Schiro's decision. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
